UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERESA L TORRES, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00855-JPH-MKK |
| | ) | |
| INDIANA STATEWIDE INDEPENDENT | ) | |
| LIVING COUNCIL, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

Everybody Counts, Inc. operates two Centers for Independent Living ("CIL") that serve Hoosiers with disabilities—primarily Black and Latino populations in Lake and Porter Counties. Everybody Counts's CILs, however, receive less funding than other CILs in Indiana. Everybody Counts, its Executive Director Teresa Torres, and its board member Leslie Hawker have sued nineteen defendants who are involved in funding discussions or decisions involving Indiana CILs. Plaintiffs allege, among other things, race discrimination in allocating funding in violation of federal law. Defendants have filed three motions to dismiss for failure to state a claim. Dkt. [108]; dkt. [114]; dkt. [120]. For the reasons below, those motions are **GRANTED in part and DENIED in part**.

# I.
## Facts and Background

Because Defendants have moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Everybody Counts, Inc. is a non-profit that operates two Centers for Independent Living ("CILs").  Those CILs serve Hoosiers with disabilities, primarily Black and Latino populations in Lake and Porter Counties.  Dkt. 92 at 11, 34 (amended complaint).

CILs in Indiana—including Everybody Counts' CILs—receive state and federal funding.  *Id.* at 16–19.  That funding is administered through the Indiana Statewide Independent Living Council ("INSILC")—a nonprofit corporation established by the state as required by the Rehabilitation Act of 1973.  *Id.* at 4, 7–9, 12.  In 2004, INSILC developed a new funding formula for allocations to Indiana's CILs.  *Id.* at 14–15.  The formula drastically reduced funding to Everybody Counts' CILs while substantially increasing funding for other CILs, including CILs led by voting members of INSILC.  *Id.* at 15.

In 2017, the directors of every Indiana CIL except Everybody Counts' CILs started Independent Living Partnership, Inc. ("ILP") to act on behalf of its member CILs.  *Id.* at 17.  ILP worked with INSILC to exclude Everybody Counts from funding discussions and decisions, leading to inequitable funding for Everybody Counts' CILs.  *Id.* at 19–21.  One of those decisions was a recent funding-formula adjustment that left Everybody Counts' CILs at a continued

disadvantage so that they "continued to receive far less in funding than other CILs." *Id.* at 21–22.  The Indiana Family and Social Services Administration ("FSSA") was aware of this adjustment but did not require any changes.  *Id.*

Everybody Counts also faced false statements and accusations from INSILC and its members.  *Id.* at 22–25.  Performance reports approved in 2022 included "demonstrably false statements" accusing Everybody Counts and its leadership of "threatening, harassing and bullying communication" and "abusive and manipulative psychological violent behavior," including ridiculing people with mental health disabilities.  *Id.* at 25–29.

Everybody Counts, its Executive Director Teresa Torres, and its board member Leslie Hawker brought this case in Indiana state court in April 2024, and the case was removed to this Court in May 2024.  Dkt. 1; dkt. 1-1 at 14–64.  The amended complaint raises nine claims against nineteen defendants (FSSA, INSILC, ILP, and sixteen individual defendants who were involved with those organizations):

1. Violation of Fourteenth Amendment equal protection rights against INSILC, FSSA, and eight individual defendants.

2. Violation of First Amendment rights against INSILC, FSSA, and eight individual defendants.

3. Conspiracy to violate civil rights against eight individual defendants.

4. Violation of Title VI of the Civil Rights Act of 1964 against INSILC and FSSA.

3

> 5–7.  Defamation per se, defamation per quod, and injurious falsehood against INSILC and six individual defendants.

> 8–9.  Tortious interference with contractual relationship and concerted damages against ILP and sixteen individual defendants.

Dkt. 92.

Three of the individual defendants—John Guingrich, Rebecca Anderson, and Cynthia Rockwell—were added in the amended complaint.  *Id.* Nevertheless, Plaintiffs later filed a "Motion for Leave to Add and/or Substitute Parties" to add those defendants.  Dkt. [107].  That motion is **DENIED as unnecessary** because "a party becomes a defendant . . . when the complaint naming him is filed."  *Howell v. Tribune Enter. Co.*, 106 F.3d 215, 217 (7th Cir. 1997).

Defendants have filed three motions to dismiss for failure to state a claim.  Dkt. 108; dkt. 114; dkt. 120.[1]

## II.
## Rule 12(b)(6) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

---

[1] Plaintiffs' motion for leave to file a surreply in opposition to the motion to dismiss at docket 120 is **GRANTED** and the Court has considered the surreply at docket 170-1. Dkt. [170].

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616.  "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

Indiana substantive law governs some claims in this case.  *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).  Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law.  *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021).  In doing so, the Court may consider decisions from the Indiana Court of Appeals.  *See id.*

# III.
# Analysis

## A. Ms. Torres's and Ms. Hawker's standing

Defendants argue that Ms. Torres and Ms. Hawker lack standing to pursue most claims raised in the amended complaint.  Dkt. 108-1 at 4–7; *see* dkt. 121 at 30–32.  Ms. Torres and Ms. Hawker respond that dismissal is inappropriate because they have standing for at least one claim.  Dkt. 147 at 10–13.

The Seventh Circuit has held that "not every plaintiff in a lawsuit is required to show standing."  *Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009).  So, "[a]s long as there is at least one individual plaintiff who has demonstrated standing to assert [the claims] as his own, a court need not consider whether the other plaintiffs have standing to maintain" the claim. *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 813 (7th Cir. 2018).[2]

Here, Everybody Counts is a plaintiff for each claim and its standing is uncontested, *see* dkt. 92 at 30–54, so the Court does not address standing for

---

[2] Defendants cite the Supreme Court's recent statement that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."  Dkt. 108-1 at 5 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).  But Defendants do not argue that this statement conflicts with or overruled the holding in *Chicago Joe's Tea Room*, *see id.*; dkt. 159, and the Seventh Circuit has applied that holding since *TransUnion*, *Reporters Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 729 n.3 (7th Cir. 2025).

Ms. Torres and Ms. Hawker, *see Chicago Joe's Tea Room*, 894 F.3d at 813. Defendants' motion to dismiss based on standing therefore **is denied**.

### B. Section 1983 claims (Counts 1 and 2) against FSSA and INSILC

Plaintiffs bring Count 1 (Fourteenth Amendment) and Count 2 (First Amendment) under 42 U.S.C. § 1983, dkt. 92 at 30–33, which authorizes suits against "persons." FSSA and INSILC argue that they're entitled to dismissal because they are not "persons" under the statute. Dkt. 121 at 26–30. Plaintiffs admit that these claims cannot proceed against FSSA for this reason, dkt. 146 at 28; *see Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[A] state and its agencies are not suable 'persons' within the meaning of section 1983."), so FSSA's motion to dismiss Counts 1 and 2 against it **is granted**.

INSILC argues that it is not a "person" who may be sued under § 1983 because it is "an 'arm' of the State." Dkt. 121 at 26; *see Sebesta v. Davis*, 878 F.3d 226, 231 (7th Cir. 2017) (Arms of the state "are not among the 'persons' covered by the statute."). Plaintiffs respond that INSILC is instead "independent and autonomous from the State." Dkt. 146 at 28–31.

"To determine if a particular entity is an arm of the state, courts look primarily at two factors: (1) the extent of the entity's financial autonomy from the state; and (2) the general legal status of the entity." *Burrus v. State Lottery Comm'n. of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008). "[T]he entity's financial autonomy is the most important factor." *Id.* The financial-autonomy evaluation looks to "the extent of state funding, the state's oversight and control of the entity's fiscal affairs, the entity's ability to raise funds

independently, whether the state taxes the entity, and whether a judgment against the entity would result in the state increasing its appropriations to the entity." *Id.*

INSILC's funding comes from the Indiana General Assembly's direct appropriations and Indiana's disbursements of federal funds. Dkt. 92 at 9; *see* dkt. 146 at 30; Ind. Code § 12-12-8-5 (tasking one of FSSA's divisions with "disburs[ing] funds received by the state under the federal act"). That reflects a substantial degree of state control causing financial reliance on the state. *See Kinder v. Marion Cnty. Prosecutor's Off.*, 132 F.4th 1005, 1010–11 (7th Cir. 2025) (holding that the county prosecutor's office is an arm of the state in part because the county funding received was controlled by state law). And each of INSILC's members "is entitled to the minimum salary per diem" and reimbursement of expenses from state funds, even if they are not state employees. Ind. Code § 12-12-8-7; *cf. Kinder*, 132 F.4th at 1010 (office was an arm of the state even though only two of its employees were paid by the state). INSILC therefore has little financial autonomy from the state.

INSILC's private insurance and its ability to fundraise do not remove that financial dependence. Private insurance does not affect the analysis because "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." *Parker v. Franklin Cnty. Comm. Sch. Corp.*, 667 F.3d 910, 925 (7th Cir. 2012) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)). And even if INSILC can "raise funds independently," dkt. 146

8

at 30, its ability to do so would not compare with, for example, Purdue University, which is an arm of the state even though it can raise money "by entering . . . the market for bonds, for higher education, for services, and so forth." *Kashani v. Purdue Univ.*, 813 F.2d 843, 846 (7th Cir. 1987). Like Purdue, INSILC is "dependent on and functionally integrated with the state treasury," showing that it's an arm of the state. *Id.*

Finally, while neither party has identified whether Indiana would be legally obligated to pay a judgment against INSILC, Plaintiffs have not explained how INSILC could satisfy a judgment except with state appropriations. *See* dkt. 146 at 28–31. And its absence of taxing authority "is a strong indication that an entity is more like an arm of the state than like a county or city"—in fact, it "ensures ultimate fiscal reliance upon the state." *Kashani*, 813 F.2d at 846; *cf. Parker*, 667 F.3d at 925 (explaining that a local school corporation is not an arm of the state in part because it can levy property taxes and issue bonds to pay judgments against it.). So while Indiana might not "write out a check" to satisfy a judgment against INSILC, "it is apparent that the payment would directly affect the state treasury." *Kashani*, 813 F.2d at 846.

INSILC's legal status also shows that it's an arm of the state. Organizationally, INSILC "is not a part of a state agency" by Indiana statute,[3]

---

[3] Similarly, the federal regulation that Plaintiffs cite requires that INSILC "be independent of and autonomous from . . . State agencies," not that it be independent of the State itself or the state treasury. 45 C.F.R. § 1329.14.

but it is expressly "established" by that statute, Ind. Code § 12-12-8-6(a), and is designated as a "state unit," Ind. Code § 12-12-8-5.[4]  Its members are also all "appointed by the governor."  Ind. Code § 12-12-8-6(b).  Finally, INSILC serves all of Indiana under a statutory mandate that its members "provide statewide representation."  Ind. Code § 12-12-8-6(c); *Kashani*, 813 F.2d at 847 (explaining that the Supreme Court has looked "to whether [the entity] served the state as a whole or only a region").

For the same reasons, INSILC is not like Indiana's State Lottery Commission, as Plaintiffs contend.  *See Burrus*, 546 F.3d at 423.  The Seventh Circuit held that the State Lottery Commission was not an arm of the state because it "is a pure profit producer for the state," "pays any legal obligation from its own administrative trust fund," and is treated as a separate entity from the state.  *Id.* at 420–23.  None of those things are true here.

INSILC therefore is an arm of the state.  *See Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (Vincennes University—despite its regional mission—is an arm of the state because it "was created by an Indiana statute, two-thirds of its budget comes from the state and the rest from tuition, and nine of its fourteen trustees are appointed by the governor.").  INSILC's motion to dismiss Counts 1 and 2 against it **is granted**.

---

[4] INSILC also cites its State Plan for Independent Living, in which it described itself as a "separate entity" from the state and emphasized its "independence and autonomy from the state."  Dkt. 146 at 30.  Even if INSILC's self-description is relevant to whether it is an arm of the state, INSILC undercuts its argument by acknowledging that it created the "*State* Plan" and describing the Plan as a "governmental report."  *Id.*

## C. Section 1983 claims (Counts 1 and 2) against individual defendants

Plaintiffs also allege Counts 1 and 2 against eight individual defendants—Ms. Fleenor, Ms. Weldy, Ms. Hall, Ms. Rockwell, Ms. Themel, Ms. Bates, Ms. Hope, and Ms. Koleszar—in their individual capacities and in their official capacities with INSILC or FSSA.  Dkt. 92 at 4–7, 30–33.

### 1. Official capacity claims

These individual defendants concede that Plaintiffs' official-capacity claims are permissible under *Ex parte Young*, "which authorizes a federal suit against state officials for the purpose of obtaining prospective relief against an ongoing violation of federal law."  *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 515 (7th Cir. 2021); *see* dkt. 169 at 5; dkt. 159 at 6–7.  They argue, however, that only Ms. Fleenor—as INSILC's current chair—is an appropriate official for such a claim.  Dkt. 169 at 5–6.  Plaintiffs contend that their official-capacity claims may proceed against each of these defendants for prospective injunctive relief.  Dkt. 146 at 26–30; dkt. 147 at 22–24.

The proper defendant for an *Ex parte Young* claim is a state official with "sufficient connection with the enforcement of the law" to provide the prospective relief at issue.  *Peshek v. Johnson*, 111 F.4th 799, 804 (7th Cir. 2024).  Ms. Hall, Ms. Hope, and Ms. Rockwell were former officials of FSSA or INSILC.  Dkt. 92 at 6–7.  Since *Ex parte Young* authorizes only claims against current state officials for prospective injunctive relief, the motion to dismiss the

11

official-capacity claims against Ms. Hall, Ms. Hope, and Ms. Rockwell **is granted**. *See Valcq*, 16 F.4th at 515, 518.

Ms. Koleszar and Ms. Bates are directors within FSSA, dkt. 92 at 6–7, but they argue that the official-capacity claims against them should be dismissed because Plaintiffs have not alleged that they may bind FSSA to prospective relief. Dkt. 169 at 6. Plaintiffs' allegations that Ms. Koleszar and Ms. Bates direct relevant programs within FSSA is enough to plead a "sufficient connection with the enforcement of the law" at this stage, *Peshek*, 111 F.4th at 804, so the motion to dismiss the official-capacity claims against them **is denied**.

Ms. Fleenor is INSILC's current chair, and Ms. Weldy and Ms. Themel are current INSILC members. Dkt. 92 at 5–6. They argue that the claims against Ms. Weldy and Ms. Themel are "superfluous" because Ms. Fleenor is INSILC's chair and a "single, correct official is sufficient." Dkt. 169 at 6. The amended complaint does not establish, however, that INSILC's chair may act on only her own authority, so the motion to dismiss the official-capacity claims against Ms. Weldy and Ms. Themel **is denied**. *See Valcq*, 16 F.4th at 519 (explaining that an injunction against only one member of a three-member commission "would be pointless" but the claim could proceed against two members)[5].

---

[5] The amended complaint does not address whether an injunction against three INSILC members could be effective, but no motion for an injunction is currently pending and the Court need not address that issue at this pleadings stage—it's enough that Plaintiffs have not pleaded themselves out of court under *Ex parte Young*.

## 2. Individual capacity claims

Section 1983 allows claims that "seek to impose individual liability upon a government officer for actions taken under color of state law." *Gonzalez v. McHenry County, Ill.*, 40 F.4th 824, 828 (7th Cir. 2022). But § 1983's cause of action is "based on personal liability and predicated upon fault." *Milchtein v. Milwaukee County*, 42 F.4th 814, 824 (7th Cir. 2022). So a "government official is liable only if he personally caused or participated in a constitutional deprivation." *Id.*

Plaintiffs allege that each of these individual plaintiffs are current or former INSILC members, or current or former directors within FSSA. Dkt. 92 at 5–7. But Plaintiffs point to no allegations in the amended complaint that describe what each individual plaintiff did to violate Plaintiffs' constitutional rights. Dkt. 146 at 41–42; *see Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (A complaint must "adequately connect specific defendants to illegal acts.").

Instead, they rely on their allegation that "the individual Defendants Abigail Fleenor, Kacie Weldy, Erin Hall, Cynthia Rockwell, Tammy Themel, and Theresa Koleszar . . . violated the Fourteenth Amendment by treating individuals served by Everybody Counts, Inc. different from individuals served by other CILs." Dkt. 146 at 42 (citing dkt. 92 at 31 ¶ 156). Plaintiffs also allege that some of these defendants, through INSILC, "supported [that] inequitable funding" and "recently adjusted the funding formula again . . . [leaving] Indiana Counts's CILs at a continued disadvantage." *Id.* (citing dkt.

13

92 at 20–22 ¶¶ 110, 121).  For their First Amendment claim, Plaintiffs similarly rely on their allegation that the eight individual defendants "intentionally withheld funds from Everybody Counts, Inc. because of this protected political speech."  *Id.* (citing dkt. 92 at 32 ¶ 169).

All of Plaintiffs' relevant allegations thus treat these individual defendants collectively, with general allegations.  That is not enough—"[a]n allegation that a group of defendants is liable without any details about who did what does not state a claim for relief."  *Milchtein*, 42 F.4th at 824; *accord Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (Individual-capacity claims fell "far short of [the pleading] standard" when they did "not tie any defendant to a specific [government] policy at a specific time.").  This standard does not require Plaintiffs to allege "every single action taken by the individual Defendants to survive a motion to dismiss," as they worry.  Dkt. 146 at 42. But "a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).  Indeed, the cornerstone of notice pleading is that "[e]ach Defendant is entitled to know what he or she did that is asserted to be wrongful."  *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). So "[a] complaint based on a theory of collective responsibility must be dismissed."  *Id.*

14

The motion to dismiss the § 1983 claim against Ms. Fleenor, Ms. Weldy, Ms. Hall, Ms. Rockwell, Ms. Themel, Ms. Bates, Ms. Hope, and Ms. Koleszar in their individual capacities **is granted**.[6]

### D. Civil rights conspiracy claim (Count 3)

Plaintiffs allege a conspiracy to violate 42 U.S.C. § 1983 against Defendants Abigail Fleenor, Kacie Weldy, Tammy Themel, Theresa Koleszar, Cynthia Rockwell, Virginia Bates, Kylee Hope, and Erin Hall. Dkt. 92 at 33. Defendants argue that this claim must be dismissed because all defendants are state actors, while a conspiracy claim under 42 U.S.C. § 1985 "requires the involvement of a private actor." Dkt. 121 at 47–18; *see* dkt. 108-1 at 17–18. Plaintiffs respond that Count 3 also alleges a conspiracy under § 1983, which does not require a private actor. Dkt. 146 at 42–43; dkt. 147 at 25.

In reply, Defendants concede "that conspiracy claims may proceed against all state actors under § 1983," but argue that the claim should be dismissed to the extent it relies on § 1985. Dkt. 169 at 14. At this motion to dismiss stage, Count 3 cannot be parsed the way Defendants request. *See Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) ("[A] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims."). Instead, when "a plaintiff states a plausible claim for relief under one discernable legal theory," the Court's review

---

[6] Because the individual-capacity claims in Counts 1 and 2 are dismissed on this basis, the Court does not address these defendants' argument that they are entitled to qualified immunity. *See* dkt. 121 at 42–43.

"start[s] and end[s] there." *Id.* Since Defendants have conceded one plausible

legal theory for Count 3, their motion to dismiss **is denied**.

Finally, only one Defendant—Ms. Themel—argues that Plaintiffs failed to

exhaust administrative remedies under the Rehabilitation Act and that she's

entitled to qualified immunity on Count 3. Dkt. 108-1 at 8–20. Plaintiffs

respond that exhaustion is not required and that it's premature to address the

affirmative defense of qualified immunity on a motion to dismiss. Dkt. 147 at

24–26.

For exhaustion, the Seventh Circuit has held that "[a] seeker of relief

under the Rehabilitation Act against a recipient of federal money is not

required to exhaust the administrative remedies that the Act provides."

*Williams v. Milwaukee Health Servs., Inc.*, 732 F.3d 770, 770–71 (7th Cir.

2013); *but see Swain v. Wormuth*, 41 F.4th 892, 896 n.2 (7th Cir. 2022) (noting

in a Rehabilitation Act employment case that "our case law has not been clear"

when exhaustion is required). Even setting that broader rule aside, the

statutes and regulations that Ms. Themel relies on provide administrative

review powers to the federal Department of Health and Human Services or the

state—not to private parties like Plaintiffs here. 29 U.S.C. §§ 796f-1(g), 796f-

2(g); 45 C.F.R. § 80.8. The only cited provision involving parties like Plaintiffs

says merely that they "may" file a written complaint if they believe they have

been discriminated against, 45 C.F.R. § 80.7(b), and that non-mandatory

language does not impose an exhaustion requirement, *see Williams*, 732 F.3d

at 771 (explaining that because the plaintiff "wasn't required to file anything"

16

she didn't "hav[e] to exhaust administrative remedies").  So even if Plaintiffs'
complaint implicates the Rehabilitation Act's remedial processes, Ms. Themel is
not entitled to dismissal on exhaustion.

For the affirmative defense of qualified immunity, at the outset, Ms.
Themel defines qualified immunity too narrowly.  *See Estate of Perry v. Wenzel*,
872 F.3d 439, 446 (7th Cir. 2017) (identifying a "case with the exact same fact
pattern . . . is not what the qualified immunity analysis requires").  She seeks
qualified immunity because no precedent involves "claims challenging funding
allocations by a Statewide Independent Living Council or its members to a
Center for Independent Living."  Dkt. 108-1 at 19–20; *see Estate of Perry*, 872
F.3d at 446.  But Statewide Independent Living Councils and CILs are
background context, so they cannot be the sole focus of a qualified immunity
analysis.  *See Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 732 (7th Cir.
2013).  Qualified immunity instead requires an analysis of "whether the law
was clear in relation to the specific facts confronting the public official when he
acted."  *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013).

Under that facts-based standard, courts "often cannot tell from a
complaint whether qualified immunity applies," and thus a motion to dismiss is
"rarely" the time to decide qualified immunity.  *Roldan v. Stroud*, 52 F.4th 335,
339 (7th Cir. 2022); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th
Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for
immunity and almost always a bad ground of dismissal.").  Here, the facts
regarding Ms. Themel's actions are not developed enough for qualified

17

immunity's fact-driven inquiry, particularly in the context of a conspiracy claim involving eight individual defendants. This is therefore a case when "the fact-intensive nature of the claim means that resolution of [the] qualified immunity defense must await factual development." *Beathard v. Lyons*, 129 F.4th 1027, 1035–36 (7th Cir. 2025) (dismissing appeal after the district court reasonably determined that a decision on qualified immunity must be postponed); *Sabo v. Erickson*, 128 F.4th 836, 843 n.2 (7th Cir. 2025) (en banc).

### E. Title VI claim (Count 4)

FSSA and INSILC do not seek to dismiss Count 4, which alleges intentional race discrimination under Title VI. Dkt. 92 at 34–35; dkt. 121 at 30. Instead, they argue that Count 4 must be narrowed because "Plaintiffs' claims of historic underfunding are limited by the applicable statute of limitations' two-year lookback." Dkt. 121 at 32. Plaintiffs respond that they allege continued violations, so the statute of limitations does not apply. Dkt. 147 at 22.

"Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Moreover, FSSA and INSILC make these arguments very briefly with no citations to legal authority supporting the narrowing of claims based on the statute of limitations on a motion to dismiss. Dkt. 121 at 32. The request to narrow Plaintiffs' claims at the pleadings stage based on an undeveloped statute-of-limitations defense is

18

therefore **denied**.  *Sidney Hillman Health Ctr.*, 782 F.3d at 928 (cautioning that such a dismissal is "irregular" and a "departure from orthodoxy" that "is appropriate only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense").[7]

### F. Defamation and injurious falsehood (Counts 5, 6, and 7)

Plaintiffs raise state-law defamation and injurious falsehood claims against INSILC and six individual Defendants based on statements in INSILC's Annual Performance Reports that Plaintiffs had engaged in "hostile, bullying, abusive behavior" toward INSILC's members as part of a "dark deep-seated pattern of abusive and manipulative psychological violent behavior."  Dkt. 92 at 35–52.  The Court must apply Indiana law by doing its best to predict how the Indiana Supreme Court would rule on the issues of law.  *Mashallah*, 20 F.4th at 319.

Defendants argue that these claims must be dismissed because they are barred by discretionary function immunity under the Indiana Tort Claims Act ("ITCA").  Dkt. 121 at 32–37, 44–46.  Plaintiffs respond that ITCA doesn't apply,

---

[7] The ILP Defendants also argue that "[m]any of the factual assertions set forth in the amended complaint are barred by the applicable statute of limitations," but their argument is similarly underdeveloped and premature.  Dkt. 108-1 at 14–16.  In several of their briefs, the parties also dispute whether the amended complaint relates back to their original complaint as to these defendants.  *See* dkt. 108-1 at 11–14; dkt. 126 at 10–12; dkt. 147 at 15–22.  Relation back does not support or prohibit a claim in itself, but affects whether claims are barred by a statute-of-limitations affirmative defense.  *See Joseph v. Elan Motorsports Tech. Racing Corp.*, 638 F.3d 555, 558–59 (7th Cir. 2011) (explaining that if an amended complaint relates back, it would "defeat the defense of statute of limitations").  Since the motions to dismiss are denied as to the statute-of-limitations defense, the Court does not address relation back.

and even if it did, the statements at issue were not part of a discretionary function.  Dkt. 146 at 31–37.

ITCA provides immunity for government actors[8] performing a "discretionary function," which is a "policy decision made by consciously balancing risks and benefits." *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 138 (Ind. 2016) (explaining Indiana Code § 34-13-3-3).  Discretionary function immunity "must be narrowly construed" and Defendants bear the burden to show that it applies.  *Id.* at 138, 143.  While discretionary function immunity "is a question of law for the court's determination," the assessment is fact-intensive.  *Id.* at 138.  It thus "requires close consideration of the nature of the governmental actions and the decision-making process that was involved."  *Id.*  Moreover, ITCA immunity is an affirmative defense, *Boyland v. Hedge*, 58 N.E.3d 928, 932 (Ind. Ct. App. 2016), so it is an appropriate basis for dismissal only if a plaintiff "plead[s] himself out of court by admitting all of the essential elements of the affirmative defense in his complaint," *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th Cir. 2022).

Here, the amended complaint's allegations include only the statements from Annual Performance Reports approved by Defendants.  Dkt. 92 at 35–52.  That's not enough to determine if the statement's function was "planning"— which gets immunity—or "operational"—which does not.  *See Peavler v. Bd. of Comm'rs. of Monroe Cnty.*, 528 N.E.2d 40, 45 (Ind. 1988) (establishing the

---

[8] The Court assumes at this stage, without deciding, that Defendants are government actors under ITCA and therefore does not address that issue.

"planning–operational test").  Nor is this case like the ones Defendants rely on, which involved law enforcement press releases.  Dkt. 121 at 37.  Indiana law has long classified law enforcement press releases as discretionary to ensure "that the prosecutor will be able to exercise the independent judgment necessary to effectuate his duties to investigate and prosecute criminals and to apprise the public of his activities." *Foster v. Pearcy,* 387 N.E.2d 446, 449 (Ind. 1979); *see Ryan v. Ctr. Twp. Constable's Off.*, No. 1:15-cv-1387-TWP-TAB, 2016 WL 4592211 at *5 (S.D. Ind. Sept. 2, 2016).  There is no law-enforcement aspect revealed in the complaint here, so this is not one of those clear discretionary-function cases.  *See Sims v. Barnes*, 689 N.E.2d 734, 737 n.3 (Ind Ct. App. 1997); *St. John v. Fritch*, No. 3:10-cv-42-RLY-WGH, 2012 WL 3028032 at *15 (S.D. Ind. July 24, 2012).

Instead, ITCA's planning–operational test requires fact-intensive nuance. *See Beloat*, 50 N.E.3d at 138.  That nuance is not available from the complaint's allegations, so—at this motion to dismiss stage—Defendants have not carried their "burden of proving that the challenged act or omission was a policy decision made by consciously balancing risks and benefits." *State v. Lucas*, 223 N.E.3d 253, 259 (Ind. Ct. App. 2023).

Indeed, that's the typical result for an affirmative defense like ITCA immunity at the pleadings stage because a "complaint need not anticipate— much less refute—a possible affirmative defense." *Luna Vanegas*, 46 F.4th at 645.  Since Plaintiffs have not pleaded themselves "out of court by admitting all of the essential elements of the affirmative defense in their complaint," these

claims "are not a candidate for disposition under Rule 12(b)(6)." *Id.*; *cf. Birge v. Town of Linden*, 57 N.E.3d 839, 845 (Ind. Ct. App. 2016) (denying motion to dismiss based on discretionary function immunity because it was not "clear on the face of the complaint" that it applied).

Finally, Ms. Themel argues that Count 7 must be dismissed because Indiana does not recognize a tort of injurious falsehood.  Dkt. 108-1 at 20–21. Plaintiffs respond that an injurious falsehood claim is viable under Indiana law.  Dkt. 147 at 26–27.  The Seventh Circuit has explained that an injurious falsehood cause of action has "at least some limited recognition" under Indiana law and that it "is distinct from defamation in that it is intended to protect *economic* as opposed to reputational interests." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 279 (7th Cir. 2016).  That's enough for this claim to proceed at this stage.[9]

Defendants' motion to dismiss Counts 5, 6, and 7 **is denied**.

### G. Tortious interference with contractual relationship (Count 8)

Plaintiffs allege this claim against ILP and all sixteen individual defendants.  Dkt. 92 at 52–53.  Defendants argue that this claim must be dismissed because Plaintiffs have not adequately pleaded interference with Plaintiffs' contracts.  Dkt. 108-1 at 23–25; *see* dkt. 121 at 16; dkt. 115 at 5–9.

---

[9] While the ILP defendants assert that this claim is "a duplicate of Plaintiffs' defamation . . . and tortious interference with a contractual relationship claims," they do not explain why that's so.  Dkt. 108-1 at 21.  At a later stage, the parties may address whether the elements and relief available for this claim are duplicative of other claims and, if not, whether it may be appropriate to certify to the Indiana Supreme Court whether Indiana recognizes this cause of action.

Plaintiffs respond that their amended complaint provides enough detail to give fair notice.  Dkt. 147 at 27–30.

As with Plaintiffs' individual-capacity claims discussed above, they point to no allegations in the amended complaint that describe what ILP or any individual defendant did to interfere with Plaintiffs' contractual relationships. Dkt. 147 at 27–30; *see Brooks*, 578 F.3d at 580 (A complaint must "adequately connect specific defendants to illegal acts.").  Instead, they rely on their general allegations that these Defendants worked to exclude Everybody Counts' CILs from funding discussions and opportunities, and "made false and/or otherwise injurious statements about Ms. Torres and [Everybody Counts] and committed other actions to try to get the FSSA to breach its contracts" with Everybody Counts.  Dkt. 147 at 27–30 (citing dkt. 92 at 17–19, 53 ¶¶ 91–99, 108, 232).

Since Plaintiffs' allegations treat Defendants collectively for this claim with little detail, they have not satisfied the requirements of notice pleading. *See Milchtein*, 42 F.4th at 824 ("An allegation that a group of defendants is liable without any details about who did what does not state a claim for relief.").  As explained above, the cornerstone of notice pleading is that "[e]ach Defendant is entitled to know what he or she did that is asserted to be wrongful."  *Bank of Am., N.A.*, 725 F.3d at 818; *accord Orr*, 147 F.4th at 741.

Plus, this claim requires, among other elements, "the existence of a valid and enforceable contract" and each "defendant's intentional inducement of breach of the contract."  *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 543 (7th Cir. 2012).  But the amended complaint provides only a vague

allegation that there were contracts generally related to "funding."  *See* dkt. 92 at 53.  That does not provide notice about the nature of any contracts between Plaintiffs and FSSA or the federal government that were allegedly interfered with.  *See Orr*, 147 F.4th at 741 ("As we have reiterated many times, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Nor does it connect Defendants' alleged actions with "intentional inducement of breach."  *See* dkt. 92 at 53.  Instead, the allegations involve future funding or funding opportunities, with no explanation how that connects to FSSA's contractual obligations as required for this claim.  Dkt. 147 at 29–30 (citing dkt. 92 at 17–20 ¶¶ 97, 109).

Plaintiffs therefore have not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Kap Holdings, LLC v. Mar–Cone Appliance Parts Co.*, 55 F.4th 517, 523–27 (7th Cir. 2022) (affirming dismissal of breach-of-contract claim when plaintiffs did not plead facts supporting intent to create a contract or concrete terms).  The motion to dismiss Plaintiffs' tortious interference with contractual relationship claim **is granted**.  Because this claim is dismissed, the motion for more definite statement on this claim is **denied as moot**.  Dkt. [116]; *see* dkt. 108-1 at 25.

### H. Concerted action (Count 9)

For Plaintiffs' concerted action claim, Defendants argue only that it must be dismissed if Plaintiffs' other state-law claims are dismissed, because concerted action requires an underlying tort.  Dkt. 121 at 48; *see* dkt. 108-1 at

25–26. Because Counts 5, 6, and 7 proceed, Defendants' motion to dismiss all of Count 9 **is denied**. However, Defendants ILP, Bates, Hope, O'Haver, Ciancone, McCormick, Nelson, Quarles, Browning–Varble, Guingrich, and Anderson were named in Count 8—which is dismissed—but not Counts 5, 6, or 7. Those Defendants therefore **are dismissed** from Count 9 as they are no longer defendants in an underlying claim and the allegations did not identify their individual conduct that could support liability.

## IV.
## Conclusion

Plaintiffs' motion for leave to add parties is **DENIED as unnecessary** because the defendants at issue were already added as parties in the amended complaint. Dkt. [107]; *see* dkt. 92. Plaintiffs' motion to file surreply is **GRANTED**. Dkt. [170].

Defendants' motions to dismiss are **GRANTED in part and DENIED in part**:

- Counts 1 and 2 **are dismissed** as to FSSA; INSILC; all individual defendants in their individual capacities; and Ms. Hall, Ms. Hope, and Ms. Rockwell in their official capacities.

- Count 8 **is dismissed**.

- Count 9 **is dismissed** as to Defendants ILP, Bates, Hope, O'Haver, Ciancone, McCormick, Nelson, Quarles, Browning–Varble, Guingrich, and Anderson

- The motions to dismiss are otherwise **denied**.

Dkt. [108]; dkt. [114]; dkt. [120]. Defendant Beth Quarles's motion for more definite statement is **DENIED as moot**. Dkt. [116].

25

The **Clerk is directed to terminate as Defendants** Independent Living

Partnership, Inc.; Amber O'Haver; Peter Ciancone; Jim McCormick; David

Nelson; Beth Quarles; Amy Browning–Varble; John Guingrich; and Rebecca

Anderson.

**SO ORDERED.**

Date: 9/22/2025

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel